IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RAMON ALVARDO GARCIA #1764981 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv279 |
| BOBBY LUMPKIN, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights in the Michael Unit. The case was referred to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Background**

Plaintiff sues Lieutenant Douglas Foust and Officer Jocelyn McCoy for alleged excessive uses of force, including deployment of chemical spray against him, in the Michael Unit in July 2022. (Dkt. #13.) He acknowledges this force was used after a "verbal confrontation" between Plaintiff and McCoy about his not being permitted to go out for recreation, during which he "dash[ed] her with water." (*Id.* at 10; Dkt. #13-2 at 3–4.)

Plaintiff also sues Michael Unit Warden Lonnie Townsend and TDCJ Director Bobby Lumpkin in connection with both the excessive force incidents and the general conditions at the Michael Unit pursuant to Covid-19 pandemic protocols allegedly imposed by those Defendants. (Dkt. #13.) Specifically, Plaintiff alleges that the Covid-19 protocol "effectively allows any and all TDCJ prisons to be inadequately staffed," which has led to an "abusive culture" that resulted in the use of force against him. (Dkt. #13 at 3, 5.) He also alleges that the Covid-19 protocol has

resulted in insufficient recreation time and other diminished liberties in prison, including a "lockdown" status, without due process and in violation of the "contract" he entered when he pleaded guilty in 2011. (*Id.* at 5, 8, 11.) He complains of the lack of "adequate grievance process" in prison. (*Id.* at 6.) And he complains that he has been denied parole, which he appears to connect to an announcement by Texas Governor Greg Abbott (who is not named as a defendant to this suit) that he would not authorize the release of any prisoners due to the Covid-19 pandemic. (*Id.* at 7–8; Dkt. #13-2 at 3.)

> For relief, Plaintiff seeks:
>
> 1.) Trial by jury; 2.) Declaration regarding the Terms of the Contract; 3.) Injunctive relief requiring TDCJ units to be adequately staffed; 4.) Nominal Damages; 5.) Compensatory Damages of $3,000 for each non-director Defendant; 6.) Punitive Damages of $5,000 for each non-director Defendant; 7.) Special Damages; 8.) Costs of litigation including attorney and filing fees; and] 9.) Such further relief as the Court find necessary under the law.

(Dkt. #13 at 4.)

## II. Legal Standards and Preliminary Screening

Plaintiff's complaint is subject to screening under 28 U.S.C. § 1915A(b). That statutes provide for *sua sponte* dismissal of a prisoner's complaint if the Court finds it frivolous or malicious, if it fails to state a claim upon which relief can be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it lacks an arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). The Fifth Circuit has held that a complaint lacks an arguable basis in fact when "the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Id*. (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (internal quotation marks omitted)). In other words, during the initial screening under section 1915A, a court may determine that a prisoner's complaint is frivolous if it rests upon

delusional scenarios or baseless facts—and dismiss the complaint. *See Henry v. Kerr County, Texas*, 2016 WL 2344231 *3 (W.D. Tex. May 2, 2016) ("A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them.") (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

Moreover, a complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556.

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a

3

"formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

**III. Discussion and Analysis**

By separate Order, the Court is requiring Defendants Foust and McCoy to respond to Plaintiff's claims against them. The claims against Defendants Lumpkin and Townsend, however, require separate consideration.

Plaintiff does not allege that Defendants Lumpkin or Townsend were present during or contemporaneously aware of the allegedly excessive force used against him by Defendants Foust and McCoy. It appears that Plaintiff sues them simply because he believes them to be responsible for the general function of the prison staff by virtue of their executive and supervisory positions within the TDCJ. (*See* Dkt. #13 at 6 (referring to Lumpkin and Townsend as "the decision-makers for TDCJ and the Michael Unit, respectively").) But lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable only if he is personally involved in a constitutional deprivation, a causal connection exists between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Plaintiff vaguely alleges that Defendant McCoy's "dry gassing tactic was and is accepted by administrative Defendants Lumpkin and Townsend under their Covid-19 Protocol." (Dkt. #13 at 10.) But he does not specifically identify any policy that authorized the events he describes. Nor does he allege any specific facts that would connect his injuries—allegedly caused by force used

4

by two staff members against a single admittedly disruptive inmate—to any understaffing. Rather, Plaintiff explicitly alleges that Defendants Foust and McCoy violated the applicable Use of Force Plan. (*Id.* at 9.) There are thus no specific facts or plausible inferences connecting Plaintiff's alleged injuries to any policy promulgated by Defendant Lumpkin or Townsend. Plaintiff's conclusory assertions of some conspiracy among these supervisors and their subordinates does not change that analysis. *See Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) ("To support a conspiracy claim under § 1983, the plaintiff must allege facts that suggest 'an agreement between the . . . defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'").

To the extent the amended complaint can be construed to allege that Townsend or Lumpkin is liable because Plaintiff complained to them about Foust and McCoy, "a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 489 (N.D. Tex. 2019). Even if either of these Defendants received letters or grievances submitted by Plaintiff, that would not make them personally liable for any underlying violations. *See Emmons v. Painter*, No. MO:20-CV-00185-DC, 2021 WL 2832977, at *10 (W.D. Tex. May 23, 2021) ("[A]llegations that Defendants' denial of grievances evidenced both their personal involvement and a policy of deliberate indifference do not withstand pretrial screening."); *Selders v. LeBlanc*, No. CV 19-13075, 2020 WL 5097599, at *3 (E.D. La. July 1, 2020), *report and recommendation adopted*, No. CV 19-13075, 2020 WL 5095328 (E.D. La. Aug. 28, 2020) (dismissing claims against defendant who "is in charge of the jail and responded to two of [plaintiff's] grievance complaints" because "having a role in the grievance process does not create personal liability much less supervisory liability"). Plaintiff thus does not allege facts that would satisfy the personal involvement standard for these Defendants in connection with his excessive-force claims.

Aside from his excessive-force claims, none of Plaintiff's other claims states a claim for which relief can be granted against any Defendant. The "lockdown" conditions he describes simply do not rise to the "inhumane" level that would constitute cruel and unusual punishment under the Eighth Amendment or "atypical and significant hardship" as required to trigger a right to due process under the Fourteenth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that the Eighth Amendment does not mandate comfortable prisons or permit inhumane ones); *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Calloway v. Pinkey*, No. CV 20-562-SDD-RLB, 2022 WL 17086371, at *4 (M.D. La. Oct. 11, 2022), *report and recommendation adopted as modified sub nom. Calloway v. Louisiana*, No. CV 20-562-SDD-RLB, 2022 WL 17084374 (M.D. La. Nov. 18, 2022) ("Placement in extended lockdown is generally not sufficiently atypical or such a significant hardship to state a claim of constitutional dimensions.").

An inmate has no due process right to an effective prison grievance system, and "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *see also Schwarzer v. Wainwright*, 810 F. App'x 358, 360 (5th Cir. 2020) ("Schwarzer cannot demonstrate that prisoners have a constitutional right to a grievance system."). Even if Plaintiff included sufficient factual detail about this allegation to satisfy Rule 8, therefore, any claim arising from the failure to provide him with an effective grievance system would fail to state a claim upon which relief could be granted.

Plaintiff has not identified any viable legal theory under which his 2011 plea of guilty to criminal charges constituted a contract for any particular level of amenities or liberties in prison, as distinct from a specific term of imprisonment. He cites no provision in his plea agreement or criminal judgment regarding the day-to-day conditions of his incarceration, and it is obvious that

none of the Defendants to this action were parties to his plea agreement. Moreover, his "contract" claim, which would effectively prevent prison officials from ever making any material changes in prison policy, procedure, or facilities once an inmate has pleaded guilty, is contrary to the established law that "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise." *Holt v. Hobbs*, 574 U.S. 352, 364 (2015).

And finally, Texas prisoners have no constitutional right to parole, *Stout v. Stephens*, 856 F. App'x 558, 559 (5th Cir. 2021) ("We have determined repeatedly that Texas law and regulations do not create a constitutionally protected liberty interest in parole."), so Plaintiff's rejection for parole is not actionable under Section 1983 regardless of whether it was based on merit or issues related to the pandemic. Moreover, even if Plaintiff had a viable claim with regard to his plea "contract" or parole, either of which would necessarily call into question the validity of his incarceration, he could not prosecute such a claim under Section 1983 until he had already been vindicated in state or federal habeas proceedings. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that, under *Heck*, "a state prisoner's section 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration").

**IV. Conclusion**

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendant Townsend or Lumpkin.

## RECOMMENDATION

Accordingly, the undersigned recommends that all claims against Defendants Townsend and Lumpkin be dismissed pursuant to 28 U.S.C. § 1915A(b).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 5th day of December, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE